UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| THE BANK OF NEW YORK MELLON,<br><br>Plaintiff,<br><br>v.<br><br>STEWART INFORMATION SERVICES CORPORATION, *et al.*,<br><br>Defendants. | Case No. 2:21-cv-01492-RFB-DJA<br><br>**ORDER** |

### I.  INTRODUCTION

Before the Court is Defendant Stewart Title Guaranty Company's Motion to Dismiss and its Motion to Stay Case, (ECF Nos. 6, 9), and Plaintiff The Bank of New York Mellon's Motion for Reconsideration and its Objection/Appeal to the Magistrate Judge's Order, (ECF Nos. 43, 44).

For the reasons stated herein, Defendant's Motion to Dismiss is denied in part and granted in part; Defendant's Motion to Stay Case is denied; Plaintiff's Motion for Reconsideration is denied; and Plaintiff's Objection/Appeal to the Magistrate Judge Order is denied.

### II.  PROCEDURAL HISTORY

Defendant filed its Petition for Removal with this Court on August 11, 2021. ECF No. 1. On August 18, 2021, Defendant Stewart Information Services Corporation and Defendant Stewart Title Guaranty Company filed Motions to Dismiss. ECF Nos. 5, 6. Plaintiff responded to both motions on September 9, 2021. ECF Nos. 13, 14. Defendant Stewart Information Services replied on September 15, 2021. ECF No. 20. Defendant Stewart Title Guaranty Company replied on October 1, 2021. ECF No. 28. Defendant Stewart Title Guaranty Company also filed a Motion to

Stay this action, ECF No. 9, to which Plaintiff filed a response on September 9, 2021, ECF No. 21. Defendant then replied on September 22, 2021. ECF No. 23.

On November 9, 2021, Defendants filed Motions to Stay Discovery. ECF Nos. 33, 34. Plaintiff responded on November 12, 2021. ECF Nos. 37, 38. Defendants replied on November 19, 2021. ECF Nos. 40, 41. Magistrate Judge Albregts granted the Motions to Stay Discovery on January 11, 2022. ECF No. 42. On January 12, 2022, Plaintiff filed a Motion for Reconsideration and an Objection/Appeal of Judge Albregts' Order. ECF Nos. 43, 44. Defendant Stewart Information Services Corporation responded to both the Motion for Reconsideration and the Objection/Appeal on January 26, 2022. ECF Nos. 45, 46. Plaintiff replied on January 28, 2022. ECF No. 48. On January 13, 2022, the Court entered an Order granting the parties' stipulation to dismiss Defendant Stewart Information Services Corporation. ECF No. 49. The Motion to Dismiss by Stewart Information Services Corporation was withdrawn. Id.

The following order addresses Defendant Stewart Title Guaranty Company's Motion to Dismiss, ECF No. 6, and its Motion to Stay Case, ECF No. 9, and Plaintiff The Bank of New York Mellon's Motion for Reconsideration, ECF Nos. 43, and its Objection/Appeal of the Magistrate Judge's Order, ECF No. 44.

### III.    FACTUAL ALLEGATIONS

The Court finds the following facts to be alleged based on the Complaint:

This action concerns real property located at 2728 Ironside Drive, Las Vegas, Nevada (the "Property"). The Property is subject to the Smoke Ranch Maintenance District Association ("HOA") Declaration of Covenants, Conditions & Restrictions ("CC&Rs"). The CC&Rs create the HOA's lien and establishes that the owner of property governed by the HOA "covenants and agrees" to pay all assessments made pursuant to the Declaration. The Declaration also establishes the HOA's intent that the covenants in the CC&RS are to run with the land, stating: "The covenants, conditions, restrictions, reservations, easements, equitable servitudes, liens and charges set forth herein shall run with the Properties and shall be binding upon all persons having any right, title or interest in the Properties, or any part thereof, their heirs, successive owners and assigns."

Article VI, Section 6.01 of the CC&Rs further states: "All assessments, together with interest, costs, and reasonable attorneys' fees for the collection thereof, shall be a charge on the land and shall be a continuing lien upon the Lot or Condominium against which such assessment is made." Thus, pursuant to the CC&Rs, an owner of property governed by the HOA covenants to pay assessments, and those assessments constitute a charge on the land secured by a continuing lien that has encumbered the property since the CC&Rs were recorded and the assessments were first charged. Additionally, Section 6.13 states that the HOA may foreclose its lien in accordance with NRS § 107, NRS § 117, "or in accordance with any similar statutes hereafter enacted applicable to the exercise or powers of sale in Mortgages and Deed of Trust, or in any other manner permitted by law."

On or around June 4, 2004, Joan Bohnet ("Borrower") obtained a loan from Realty Mortgage Corporation ("Realty Mortgage") for $147,950.00 to finance the purchase of the Property. By purchasing the Property, Borrower covenanted to pay to the HOA annual assessments or charges. On or about June 10, 2004, Borrower executed a Deed of Trust ("DOT"), providing a security interest in the Property in favor of Realty Mortgage. The Deed of Trust, along with the promissory note and all indebtedness due thereunder, was subsequently assigned to BONY Mellon Trustee.

As part of the loan origination, Stewart Title and Stewart Title of Nevada, entered into a contractual relationship with Realty Mortgage as the insured on a lender's title insurance policy, numbered CL-2229-000549640 ("Policy"), to insure that the Deed of Trust was superior to competing liens, including the HOA's lien. The Policy further obligates Stewart Title to pay the costs, the attorneys' fees, and the expenses incurred in an underlying quiet title action, defense or title, and/or the lien of the Deed of Trust, as insured. The Policy provided includes a standard endorsement CLTA Form 100 and CLTA Form 115.2. At the time it provided the Policy to Realty Mortgage, Stewart Title was aware of the HOA's CC&Rs, the HOA's lien for unpaid assessments, and the fact that the lien could take priority over the DOT pursuant to NRS Chapter 116.

In or around 2011, Borrower ceased making payments to the HOA for monthly assessments, in violation of his covenant under Section 6.01 of the CC&Rs. On July 25, 2011, the HOA, through its foreclosure agent, Red Rock Financial Services ("Red Rock"), recorded a Notice of Delinquent Assessment Lien against the Property ("Notice of Delinquency"). On May 1, 2014, the HOA, through its agent, Red Rock, recorded a Notice of Foreclosure Sale. On June 13, 2014, the HOA sold the Property at a foreclosure sale to SFR Investments Pool 1, LLC ("Buyer") for $20,000.00. The Foreclosure Deed confirms that the Property was conveyed to the HOA Buyer pursuant to NRS Chapter 116 and the CC&Rs.

On March 10, 2017, BONY Mellon Trustee filed a Complaint against HOA Buyer in the United States District Court, District of Nevada, Case No. 2:17-cv-00716-RFB-NJK, seeking a declaration that the Deed of Trust was not extinguished by the HOA Sale ("the Litigation"). The Litigation resulted in judgment in favor of BONY Mellon Trustee.

A claim was submitted under the Policy to Stewart Title (the "Title Claim") in May 2017. In the Claim, BONY Mellon Trustee requested that the Stewart Title fulfill its obligations to cure the title defects, defend BONY Mellon Trustee in the Litigation and indemnify BONY Mellon Trustee against losses. On July 19, 2017, Stephen J. Butler, Claims Representative for Stewart Title, sent BONY Mellon Trustee' counsel a letter denying coverage under the Policy based on Exclusion 3(a) and Condition and Stipulation No. 3 only. The letter admitted coverage under Form 100. The letter did not include any reservation of rights to deny the claim on any additional basis nor did the letter identify any other grounds upon which the claim was denied.

Based on the above allegations, Plaintiff brings claims for declaratory judgment; breach of contract; bad faith/breach of the covenant of good faith and fair dealing; violations of the Deceptive Trade Practices Act, NRS § 41.600 and NRS § 598.0915; and violations of NRS § 686A.310.

**IV.   LEGAL STANDARD**

An initial pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss, "[a]ll well-pleaded allegations of material fact in the complaint are accepted as true and

are construed in the light most favorable to the non-moving party." <u>Faulkner v. ADT Sec. Services, Inc.</u>, 706 F.3d 1017, 1019 (9th Cir. 2013) (citations omitted).

To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must do more than assert "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . . ." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)). In other words, a claim will not be dismissed if it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning that the court can reasonably infer "that the defendant is liable for the misconduct alleged." <u>Id.</u> at 678 (internal quotation and citation omitted). The Ninth Circuit, in elaborating on the pleading standard described in <u>Twombly</u> and <u>Iqbal</u>, has held that for a complaint to survive dismissal, the plaintiff must allege non-conclusory facts that, together with reasonable inferences from those facts, are "plausibly suggestive of a claim entitling the plaintiff to relief." <u>Moss v. U.S. Secret Service</u>, 572 F.3d 962, 969 (9th Cir. 2009).

**V.  DISCUSSION**

    a.  Defendant's Motion to Dismiss

Defendant moves to dismiss all claims against it. The Court addresses each claim in turn.

        i.  <u>Declaratory Relief and Breach of Contract</u>

Defendant first argues that Plaintiff's declaratory relief and breach of contract claims must be dismissed because the Title Claim is not covered under the clear language of the Policy. Defendant argues that title insurance, as a general matter, does not insure against future events, and protects only against defects in the title that arose prior to the issuance of the policy. Defendant further argues that the "retrospective focus" of title insurance is reinforced by Exclusion 3(d) of the policy, which bars coverage for claims arising from liens "attaching or created subsequent to the Date of the Policy." Defendant claims the Date of Policy is June 22, 2004, but the Bank's Title Claim is based on the potential loss of the DOT as a result of the foreclosure on the HOA Lien, which attached in 2011 when the unpaid HOA assessments became due. Defendant argues that

5

under clear Nevada law, an HOA lien can only arise when the underlying "unpaid assessment or fine becomes due." NRS § 116.3116(1). Because the delinquency giving rise to the HOA lien occurred in 2011, years after the Date of Policy, Defendant contends that the Title Claim is not covered under the plain language of the Policy, including Exclusion 3(d). Defendants further argue that none of the Endorsements bring the Bank's Title Claim back into coverage under the Policy. Finally, Defendant argues that the Title Claim is excluded under Schedule B of the Policy, which provides that the policy "does not insure against loss or damage by reason of . . . covenants, conditions and restrictions." Because the Title Claim is based on a loss arising from foreclosure under NRS § 116, which arose due to the Borrower's nonpayment in accordance with the HOA's CC&R provisions, Defendant argues Schedule B plainly excludes the Title Claim from coverage.

Plaintiff argues that Defendant fails to point to a specific Policy provision or language to support the claim that title insurance "does not insure against future events." Plaintiff contends that the HOA assessment obligation commenced as soon as the Lot was annexed and the Board of Directors approved the first levy of assessments, and the HOA's lien priority also existed from the date the CC&Rs were recorded based on Nevada's race-notice principles. Plaintiff argues that coverage provisions are to be examined from the viewpoint of one not trained in law or insurance business and should be interpreted broadly, so as to afford the greatest possible coverage to the insured. Further, even if coverage did not exist under the general policy provisions, Plaintiff argues that the Policy Endorsements expand the available coverage. First, Plaintiff argues that Paragraph 1(a) of ALTA 9 insures damages "by reason of…[t]he existence of…(a) covenants, conditions, or restrictions," and that the coverage under this Endorsement is not dependent on timing, including on whether priority exists on the Date of Policy. Rather, the provision merely asks whether damages were caused by the existence of CC&Rs. Second, Paragraph 2(a) of the ALTA 9 separately insures "future violations on the land of any covenants, conditions or restrictions," and "land" refers to the property encumbered by the insured DOT. Third, the CLTA 115.2 provides coverage for "the priority of any lien for charges and assessments at Date of Policy in favor of any association of homeowners which are provided for in any document referred to in Schedule B over the lien of any insured mortgage identified in Schedule A." Plaintiff argues the HOA had lien

6

priority at all times, including at the Date of Policy. Thus, coverage existed under CLTA 115.2. Plaintiff further argues the Court need not address Defendant's argument regarding Exclusion 3(d), because it applies only to liens "created subsequent to the Date of Policy," and the HOA's lien was not created subsequent to the date of Policy, but rather, when the CC&Rs were recorded in 2004.

At the core of the parties' dispute over the claims for breach of contract and declaratory judgment is whether Plaintiff's Title Claim for losses sustained as a result of the HOA foreclosure sale is covered under the Policy. Accepting the facts alleged as true and construing them in the light most favorable to Plaintiff, the Court finds that Plaintiff has plausibly alleged that its Title Claim was covered under the terms of the Policy. Plaintiff alleges that the HOA had a priority lien over the DOT at the Date of Policy. ECF No. 1-1 at ¶ 53. Plaintiff further alleges that at the time of the issuance of the Policy, Defendant was aware of the HOA's CC&Rs, of the HOA's lien for unpaid assessments, and that the lien could take priority over the DOT pursuant to NRS Chapter 116. Id. at 68. The Policy itself provides that "subject to the exclusions from coverage, the exceptions from coverage contained in Schedule B, and the conditions and stipulations," coverage exists for losses sustained by reason of "the priority of any lien or encumbrance over the lien of the insured mortgage." ECF No. 1-1 at Ex. 1. On these alleged facts, the Court finds that Plaintiff has plausibly stated that coverage existed under the Policy for the Title Claim, as it involved a lien or encumbrance of the Property.

The Court further finds that Plaintiff plausibly alleges that the Endorsements potentially expand coverage to include the Title Claim. For instance, the ALTA 9 form attached to Plaintiff's Complaint states that it "provides comprehensive coverage for insured ALTA lender against loss by reason of present *or future* CC&Rs violations." ECF No. 1-1 at Ex. 2 (emphasis added). Construed in the light most favorable to Plaintiff, this Endorsement provides coverage regardless of whether the HOA lien priority existed on the Date of Policy. This is bolstered by Plaintiff's allegation that over the years, Defendant repeatedly acknowledged through its underwriting guidelines and the writings of James L. Gosdin (Senior Vice-President, Senior Underwriting Counsel, and Chief Reinsurance Counsel for Stewart Title as of September 2006, who was also a member of the ALTA Forms Committee that authored the Endorsement forms), that the ALTA

9/CLTA 100 Endorsements "insure priority of the Insured Mortgage over future assessments by property owner's associations" such as those at issue in this case. In Nevada, a court may account for trade usage and industry custom when interpreting a contract, whether or not the contract's language is ambiguous. Galardi v. Naples Polaris, LLC, 301 P.3d 364, 366-67 (Nev. 2013). The Court accordingly finds that Plaintiff has sufficiently pled that the Endorsements extended coverage to cover the Title Claim.

The Court also declines to find at this stage that Exclusion 3(d) limited coverage. Exclusion 3(d) prevents coverage for any "loss or damage, costs, attorneys' fees or expenses which arise by reason of . . . [d]effects, liens, encumbrances, adverse claims or other matters . . . attaching to or created subsequent to Date of Policy." As stated above, the Court finds that Plaintiff has plausibly alleged that the HOA lien attached prior to the Date of Policy. Further, the Court agrees with Plaintiff that this exclusion conflicts with the language of the Endorsements—most notably paragraph 2(a) of ALTA 9/CLTA 100, which insures "*future violations* on the land of any covenants, conditions or restrictions." ECF No. 1-1 at 38 (emphasis added). Defendant argues that "land" refers to a "physical violation" only, while Plaintiff argues the reference to "on the land" means that the CC&Rs here establish that the obligation to pay assessments is an obligation "on the land." The Court finds no support for Defendant's position in the language of the Policy itself, which does not restrict coverage to physical violations. See United Nat'l Ins. Co. v. Frontier Ins. Co., 99 P.3d 1153, 1156 (Nev. 2004) ("An insurance policy may restrict coverage only if the policy's language clearly and distinctly communicates to the insured the nature of the limitation." (internal quotation marks omitted)). At the very least, this apparent conflict between the language of the exclusion and the Endorsement creates interpretative questions and factual disputes that cannot be resolved on a Motion to Dismiss and which would benefit from discovery.

For the reasons stated above, the Court finds that Plaintiff has alleged sufficient well-pleaded facts which, if true, would entitle it to a claim for breach of contract and declaratory relief. As such, the Motion to Dismiss is denied with respect to these claims.

ii. Bad Faith

The Court next addresses Plaintiff's bad faith claim. Defendant argues Plaintiff's bad faith

8

claim is based entirely on its disagreement with Defendant's interpretation of the Policy provisions, which cannot give rise to a bad faith claim. Defendant alleges the claim necessarily fails for the same reason as the Bank's declaratory relief and breach of contract claims – i.e., there is no coverage for the Bank's Title Claim under the Policy – and thus there is no duty to defend or indemnify. Plaintiff responds that the Complaint does not allege that Defendant denied coverage on a mere interpretive disagreement, but instead accepted coverage but "limited it to pennies on the dollar, failed to analyze actual notice, construed inferences in its favor rather than the insured, and completely refused to provide a defense."

To state a claim for bad faith against an insurer, the plaintiff must allege "the insurer had no reasonable basis for disputing coverage, and that the insurer knew or recklessly disregarded the fact that there was no reasonable basis for disputing coverage." Powers v. United Services Auto. Ass'n, 962 P.2d 596, 604 (1998). The reasonableness of an insurer's claims-handling conduct is a factual question, generally left for the jury. Amadeo v. Principal Mut. Life Ins. Co., 290 F.3d 1152, 1162 (9th Cir. 2002). The Court finds that Plaintiff has sufficiently alleged a claim for bad faith. Plaintiff has alleged that Defendant knew the Policy included Endorsements known and described as providing coverage against the enforcement of an HOA superpriority lien, but nevertheless denied coverage for losses arising from the HOA's enforcement of that lien. Plaintiff further alleges that this behavior was widespread, the result of "patterns and practices" involving "Nevada HOA foreclosure sales" generally, and not a one-off mistake, but the product of a "systemic and reckless and/or intentional practice of mishandling and denying otherwise valid claims in order to avoid their obligations." The Court finds that these allegations are sufficient to state a claim for bad faith.

### iii.  Deceptive Trade Practices Act

The Court next turns to Plaintiff's Deceptive Trade Practices Act ("DTPA") claim. Defendant argues this claim is time-barred, as the statute of limitations for such a claim is four years, but Plaintiff alleges that Defendant engaged in a deceptive trade practice as early as 2004, when Defendant allegedly misrepresented whether the Policy covered losses from NRS Chapter 116 foreclosures. Defendant further notes that Plaintiff alleges this misrepresentation "has been

9

publicly known since 1991, when NRS Chapter 116 was enacted." As such, the Bank knew or should have known "the facts constituting the deceptive trade practice" in 2004, when the Policy was issued. Plaintiff responds that its claim is not time-barred, because the statute of limitations does not commence until discovery of the claim. Plaintiff does not, however, specify when discovery of the claim occurred. The Court finds that the latest possible date at which the claim could have been discovered, based on the facts alleged in the Complaint, was July 19, 2017, when Defendant sent Plaintiff's counsel a letter denying coverage under the Policy. The Complaint was filed in state court on July 15, 2021, just shy of the four-year deadline.

Defendant further argues that Plaintiff has failed to state a claim under the Deceptive Trade Practices Act. Defendant argues a consumer fraud claim can only be brought by and against parties involved in the subject transaction, and that here, neither Plaintiff nor Defendant were a party to the subject transaction, as it was nonparty Stewart Title who issued the Policy to nonparty Realty Mortgage. Defendant argues that "common sense dictates [Defendant] could not have made a 'false representation' during a transaction in which it was not involved." Further, Defendant argues, Plaintiff's claim cannot satisfy Rule 9(b)'s heightened pleading standard of providing the "who, what, when, where" requirements of pleading fraud. Plaintiff responds that Defendant conflates the DTPA with a claim for fraud. Plaintiff further argues the Complaint adequately details the misrepresentations allegedly giving rise to the claim.

A deceptive trade practices claim brought pursuant to NRS § 41.600(1) is subject to Rule 9(b)'s heightened pleading requirements. Allstate Ins. Co. v. Belsky, No. 2:15-cv-02265-MMD-CWH, 2017 U.S. Dist. LEXIS 224167, at *21 (D. Nev. Mar. 31, 2017) (citing Brown v. Kellar, 636 P.2d 874, 874 (Nev. 1981)). To satisfy this requirement, the Complaint must state "the time, place, and specific content of the [fraud] as well as the identities of the parties to the [fraud]." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986).

The Court finds that Plaintiff has not satisfied the heightened pleading standard for a DTPA claim here. The Complaint broadly alleges that sometime in 2004, Plaintiff's predecessor Realty Mortgage received endorsement language "plainly intended to provide coverage in the event the Deed of Trust lost priority or was otherwise impaired by operation of the HOA's CC&Rs," and

that Plaintiff subsequently "relied to its detriment upon Defendant's representations" that the subject endorsements would provide such coverage. ECF No. 1-1 at ¶ 133, 135. The Court finds that the Complaint, to the extent it speaks to consumer fraud at all, only makes conclusory statements about the title insurance agency. These allegations are insufficient to establish "the time, place . . . specific content . . . [and] identities of the parties to the [fraud]," such that the Defendant is on "notice of the particular misconduct which is alleged to constitute the fraud charged." Schreiber Distrib. Co., 806 F.2d at 1401; Bly-Magee v. California, 236 F.3d 1014, 1018 (9th Cir. 2001). The Court accordingly dismisses the Deceptive Trade Practices Act claim.

### iv. Unfair Settlement Practices (NRS § 686A.310)

Finally, the Court dismisses Plaintiff's unfair settlement practices claim under NRS § 686A.310 as time-barred. "A claim based on violation of Nev. Rev. Stat. § 686A.310 must be filed within three years of the triggering event. Under Nevada law, an insured's limitations period does not begin to run until the insurer "formally denies" liability or additional benefits." Williams v. Travelers Home & Marine Ins. Co., 740 Fed. Appx. 134, 134 (9th Cir. 2018). The limitations period "is triggered by 'notif[ication] that [the] carrier has failed to fulfill its promise to pay a claim.'" Id. (quoting Grayson v. State Farm Mut. Auto. Ins., 971 P.2d 798, 800 (Nev. 1998). It is undisputed that Defendant denied coverage on July 19, 2017, and that Plaintiff brought the instant suit four years later, on July 15, 2021. Because the claim was brought outside of the three-year statute of limitations, the Court dismisses Plaintiff's claim for unfair settlement practices.

### b. Defendant's Motion to Stay Case

On September 1, 2021, Defendant filed a motion to stay this action until the Ninth Circuit issued its decision in Wells Fargo Bank, N.A. v. Fid. National Title Ins. Co. ("Wells Fargo II"), No. 19-17332 (D. Nev. No. 19-CV-00241). The Ninth Circuit issued its ruling on November 5, 2021. See Wells Fargo II, No. 19-17332, 2021 WL 5150044 (9th Cir. Nov. 5, 2021). Defendant's motion to Stay Case is therefore moot.

### c. Plaintiff's Motion for Reconsideration and Objection/Appeal of the Magistrate Judge's January 11, 2022 Order

In light of the Court's conclusion that Plaintiff has plausibly alleged some claims for relief,

Plaintiff's motion for reconsideration and Objection/Appeal of the Magistrate Judge's January 11, 2022 Order staying discovery are denied as moot. As stated above, the Court finds that Plaintiff has plausibly alleged claims that would benefit from discovery.

### VI. CONCLUSION

**IT IS THEREFORE ORDERED** that the Motion to Dismiss (ECF No. 6) is GRANTED in part and DENIED in part.

**IT IS FURTHER ORDERED** that the Motion to Stay Case (ECF No. 9) is DENIED.

**IT IS FURTHER ORDERED** that the Motion for Reconsideration (ECF No. 43) is DENIED.

**IT IS FURTHER ORDERED** that the Objection/Appeal to the Magistrate Judge Order (ECF No. 44) is DENIED.

**IT IS FURTHER ORDERED** that the parties shall meet and confer and refile a joint discovery plan and scheduling order containing mutually agreeable discovery deadlines for the Magistrate Judge's consideration.

**DATED:** September 15, 2022

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**